ROBERT W. NORMAN (SBN 232470)
GABRIEL OZEL (SBN 269098)
HOUSER & ALLISON, APC
One Pacific Heights
9920 Pacific Heights Blvd, Suite 150
San Diego, California 92121
Telephone: (760) 603-9664
Facsimile: (949) 679-1112
E-Mail: gozel@houser-law.com

Attorneys for Defendant, HSBC Bank USA, National Association, as Trustee for
Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM1

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Chauntel Marie Blackwood<br><br>Debtor. | Case No.: 17-07347-LA13<br><br>Chapter 13<br><br>Adv. Proc. No. 18-90072-LA |
| Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1,<br><br>Plaintiff,<br><br>v.<br><br>HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc. Asset-Backed Certificates, Series 2006-FM1,<br><br>Defendant. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>**[F.R.C.P. 12(b)(6)]**<br><br>**Date:  August 9, 2018**<br>**Time:  2:00 p.m.**<br>**Dept.:  2** |

NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND COUNSELS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 9, 2018, at 2:00 p.m., or soon thereafter as the matter can be heard, in Department 2 of the above-entitled Court, Defendant HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM1 ("Defendant") will, and hereby do, move the Court to dismiss the Adversary Complaint ("Complaint") filed by Plaintiff Deutsche Bank National Trust Company, as certificate trustee on behalf of Bosco Credit II Trust Series 2010-1 ("Plaintiff").

This Motion is made and based upon Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012, and on the grounds that the claims contained in Plaintiff's Complaint fails to state a claim upon which relief can be granted.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and upon all pleadings, papers and documents on file herein, as well as any oral argument which may be presented at the time of the hearing or any matters of which judicial notice is requested and/or taken.

Dated: June 29, 2018

**HOUSER & ALLISON**
A Professional Corporation

By: /s/ Gabriel Ozel_____
Gabriel Ozel
Attorneys for Defendant, HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM1

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ...................................................................................................... 2

    A.  The Senior Loan Origination and Default ............................................ 2

    B.  Debtor Obtains a Junior Lien ............................................................... 3

    C.  Debtor's Prior Federal Lawsuit Regarding the 2011 Modification ......... 3

    D.  Debtor's Bankruptcies ......................................................................... 4

        1.  2009 Bankruptcy (Case No. 09-06428) ......................................... 4

        2.  The Second 2009 Bankruptcy (Case No. 13667) ............................ 4

        3.  2016 Bankruptcy (Case No. 16-05640) ......................................... 5

        4.  Instant Bankruptcy (Case No. 17-07347) ....................................... 6

III.  ARGUMENT .............................................................................................. 6

    A.  Plaintiff is Barred by Res Judicata from Objecting to Defendant's Proof of Claim and Senior Loan Amount ................................................ 6

    B.  Plaintiff is Judicially Estopped from Bringing These Claims ................ 7

    C.  Plaintiff Cannot Enforce a Contract it is Not a Party To ...................... 9

    D.  Defendant's Proof of Claim was Proper and Valid .............................. 10

    E.  Plaintiff Arguably Has No Standing to Object to Defendant's Proof of Claim ................................................................................................. 12

    F.  Plaintiff Has No Grounds to Have Defendant's Claim Disallowed ....... 13

    G.  Plaintiff's Fourth Cause of Action Fails .............................................. 14

        1.  Defendant Was Not Required to Obtain Plaintiff's Consent to Modify the Senior Loan ................................................................ 14

        2.  The 2008 Modification Was Not Material and Did Not Prejudice Plaintiff ...................................................................................... 16

IV.   LEAVE TO AMEND SHOULD BE DENIED ........................................... 17

V.    CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 64 ............................ 14

*Bank of Lafayette v. Baudoin*, 981 F.2d 736 ........................................................ 7

*Bank of New York Mellon v. Citybank, N.A.*, 8 Cal.App.5th 935 ........................... 16

*Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999) ........... 10

*Chang v. Chen*,  80 F.3d 1293 ........................................................................... 17

*Federal Home Loan Mortg. Corp.*, 143 F.3d 525 ................................................ 12

*Friery v. Suttes Bank Savings*, 61 Cal.App.4th 869, 877, 880 ......................... 14, 15

*Gluskin v. Atlantic Savings & Loan*, 32 Cal.App.3d 307 .................................... 15

*Hamilton v. State Farm Fire & Gas*, 270 F.3d 783, 785, 778 ............................ 8, 9

*HPG Corp., supra*, 436 B.R. at 579 ..................................................................... 9

*In re Bakke*, 243 B.R. 753, 755 ......................................................................... 13

*In re Bevan*, 327 F.3d 994 .................................................................................. 7

*In re Burkett*, 329 B.R. 820 .............................................................................. 12

*In re G.I. Indus, Inc.*, 204 F.3d 1276 ................................................................. 14

*In re LightSquared Inc.*, 504 B.R. 321 ............................................................... 13

*In re MacFarland*, 462 B.R. 857 ........................................................................ 11

*In re Southern Calif. Plastics, Inc.*, 165 F.3d 1243 ............................................ 10

*Law v. Siegal*, 571 U.S. 415, ............................................................................ 14

*Lennar Northeast Partners v. Buice*, 49 Cal.App.4th 1576 ................................. 15

*LightSquared Inc.*, at 341 ................................................................................ 13

*Matter of SNTL Corp.*, 571 F.3d 826 .................................................................. 13

*Mission Oaks Ranch, Ltd. v. County of Santa Barbara*, 65 Cal. App. 4th 713 ....... 10

*Newman v. First Security Bank of Bozeman*, 887 F.2d 973 ................................... 5

*Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 ......................... 7

*Robinson v. Hiles*, 119 Cal.App.2d 666 .............................................................. 10

NOTICE OF MOTION AND MOTION TO DISMISS

ii

*Russell v. Rolfs*, 893 F.2d 1033 ................................................................. 8

*Seigal v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998) ............. 7

*United States v. Coast Wineries,* 131 F.2d 643 ........................................ 7

**Statutes**

11 U.S.C. § 502(a)(1) .................................................................. 13

11 U.S.C. § 506(d)(2) .................................................................. 5

**Rules**

Fed. R. Bank. P. 3001(c)(1), (f) ...................................................... 10

Fed. R. Bankr. P. 3007 ................................................................ 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, a voluntary junior lienholder, for some reason seeks to disallow the senior lien of Defendant despite having no basis to do so. There is nothing invalid about Defendant's proof of claim or loan amount and any suggestion otherwise is disingenuous. For many years and multiple bankruptcies, Plaintiff did not object or otherwise oppose Defendant's lien amount or priority. It is doing so now only because its lien faces yet another motion to value by the Debtor.

Plaintiff claims that the 2008 modification prejudiced its lien by misciting the terms of the modification. Plaintiff's attempt to mislead the Court into thinking the 2008 modification was material and or prejudicial to its junior lien is improper. There was nothing material about the 2008 modification. In fact, the modification reduced the principal balance and fixed the interest rate lower than what Debtor could have possibly had under the original terms. Plaintiff also erroneously claims that Defendant was required to obtain Plaintiff's consent to modify the senior loan. However, California law does not support that notion. There is no subordination agreement between Plaintiff and Defendant that would obligate Defendant to obtain Plaintiff's consent before modifying the senior loan.

There is absolutely nothing wrong with Defendant's proof of claim, senior loan amount or its validity. Plaintiff improperly relies on an unenforceable 2011 modification Defendant offered to Debtor as a basis to contest Defendant's claim. First, the 2011 modification is not enforceable and Debtor's attempt to enforce the 2011 modification was dismissed with prejudice in a previous federal lawsuit between Defendant and Debtor. Second, Plaintiff lacks standing to enforce the 2011 modification because it is not a party to that contract. Notably, the actual individual who owes the debt owned by Defendant (the Debtor) does not dispute Defendant's amount. For the reasons stated herein, the Court should dismiss this case with prejudice. Any amendment as to Defendant would be futile.

## II. FACTS

### A. The Senior Loan Origination and Default

On September 7, 2005, Debtor Chauntel Marie Blackwood[1] ("Debtor") and her then husband, James Rampp ("Mr. Rampp") executed an Adjustable Rate Note ("Note") and obtained a loan in the amount of $400,000 from Fremont Investment & Loan (the "Senior Loan"). *See* RJN, Ex. 15, p. 28-31; RJN, 27, p. 115-120. The Loan was secured by a Deed of Trust on the property located at 244 Avalon Drive, Vista, California (the "Property"). RJN, Ex. 1. The Deed of Trust was recorded in the Official Records of San Diego County on September 12, 2005 as Document No. 2005-0787005. Per the Note, the initial interest rate on the Loan was 7.950% with the principal interest portion of the monthly payment initially totaling $2,921.31. RJN, Ex. 15, p. 28-31; RJN, 27, p. 115-120. The Note and Deed of Trust was assigned to Defendant. RJN 2. Ocwen is the current servicer of the Loan. Cmplt., ¶ 10.

Shortly after obtaining the Senior Loan, Debtor and Mr. Rampp defaulted on their monthly mortgage payments. RJN, Ex. 4: 32:12-14; 33:21-23; RJN, Ex. 5: 46:19-47:1.[2] They were able to avoid foreclosure by modifying the Senior Loan. Debtor and Mr. Rampp agreed with the prior servicer and Defendant to modify the repayment terms and the total amount due of the Note. RJN, Ex. 15, p. 33-39; RJN, Ex. 27, p. 84-88. The Senior Loan was reinstated as of April 1, 2008. Debtor and Mr. Rampp executed a Loan Modification Agreement. The new principal balance of the after the modification was reduced to $391,333.20 with the new payments beginning April 1, 2008 and re-amortized to maturity, October

---

[1] Debtor is also formerly known as Chauntel Rampp.

[2] The deposition transcripts of Plaintiff and Mr. Rampp (RJN Exs. 4, 5), as well as the declaration of Sandra Lyew on behalf of Defendant (RJN, Ex. 13) were previously filed in support of Defendant's motion for summary judgment in the Federal Lawsuit. The facts stated in the transcripts and declaration are relevant for the purposes of this Motion to Dismiss.

1, 2035. The new interest on the Senior Loan is now 9.450% fixed to maturity. *Id*.

### B. Debtor Obtains a Junior Lien

Also on September 7, 2005, Debtor and Mr. Rampp executed a Second Note in favor of and obtained a loan in the amount of $100,000 from Fremont Investment & Loan (the "Junior Loan"). Cmplt., ¶ 12, RJN, Ex. 6, p. 22-24; RJN, Ex. 30, p. 7-11. The Junior Loan was secured by a Second Deed of Trust on the Property. Cmplt., ¶ 13; RJN, Ex. 6, p. 6-21; RJN, Ex. 30, p. 12-30. The Second Deed of Trust was recorded in the Official Records of San Diego County on September 12, 2005 as Document No. 2005-0787006. Per the Second Note, the interest rate on the Loan was 9.990% fixed with the principal interest portion of the monthly payment initially totaling $876.84. RJN, Ex. 6, p. 22-24; RJN, Ex. 30, p. 7-11. The Second Note and Second Deed of Trust were allegedly assigned to Plaintiff. Cmplt. ¶ 15.

### C. Debtor's Prior Federal Lawsuit Regarding the 2011 Modification

Debtor and Mr. Rampp again stopped making on the Senior Loan and foreclosure proceedings were commenced.[3] A Notice of Default was recorded in early 2009 as a result. RJN, Ex. 3. Pursuant to the Notice of Default, the Senior Loan was in default in the amount of $18,956.41 as of January 21, 2009. *Id*. Debtor and Mr. Rampp executed a loan modification in 2011 (the "2011 Modification"). However, Debtor and Mr. Rampp procured the 2011 Modification through fraud and misrepresentations and thus, the 2011 Modification was not enforceable.[4]

---

[3] Sometime in 2009, Debtor and Mr. Rampp divorced. *See* RJN, Ex. 4: 36:4-17; RJN, Ex. 5: 59:23-60:1.

[4] Defendant in the previous case contended, using Debtor and Mr. Rampp's deposition testimony, that the 2011 Modification was obtained and procured through fraud. The 2011 Modification was only offered on the basis that the Property was to be used as principal residence but it was not.

Debtor filed a lawsuit on December 27, 2011 in the Southern District of California, Case No. 11-03017 (the "Federal Lawsuit") to enforce the 2011 Modification. The Federal Lawsuit was resolved and was dismissed with prejudice on March 20, 2015. RJN, Ex. 7.

### D. Debtor's Bankruptcies

#### 1. <u>2009 Bankruptcy (Case No. 09-06428)</u>

On May 11, 2009, Debtor filed for bankruptcy under Chapter 7 in the Southern District of California, as Case No. 09-06428 (the "First 2009 Bankruptcy"). RJN, Ex. 8. In her petition and bankruptcy schedules, Debtor did not dispute the Senior Loan and listed the amount of claim owed on the Senior Loan at $418,931.00. In response to the Defendant's Motion for Relief from the Automatic Stay, Debtor admitted the arrearages on the Senior Loan was $51,166 with the last payment made on October 1, 2008. RJN, Ex. 9.

#### 2. <u>The Second 2009 Bankruptcy (Case No. 13667)</u>

On September 11, 2009, Debtor filed for bankruptcy under Chapter 13 in the Southern District of California, as Case No. 09-13667 (the "Second 2009 Bankruptcy"). RJN, Ex. 10. In her petition and bankruptcy schedules, Debtor did not dispute the Senior Loan and listed the amount of claim owed on the Senior Loan at $418,931.00. *Id*. Debtor filed a Motion to Void the Junior Loan on February 6, 2010. RJN, Ex. 11. In the Motion to Void, Debtor admits Defendant is owed at least $453,084.29. *Id*. Notably, the Junior Loan did not object or otherwise oppose to the Motion to Void, despite having filed a Proof of Claim on September 28, 2009. *See* RJN, Exs. 6, 12. Debtor also admits to owing this amount on the Senior Loan in her response to Defendant's Motion for Relief from

---

The 2011 Modification was also contingent on Debtor and Mr. Rampp making an initial payment and ongoing payment, but Debtor and Mr. Rampp admitted they never made a payment and never intended on making a payment. *See* RJN, Exs. 4-5, 13.

the Automatic Stay. RJN, Ex. 14.

On November 6, 2009, Defendant filed a Proof of Claim.[5] RJN, Ex. 15. The Proof of Claim stated the amount owed on the Senior Loan was $440,423.40, with the arrearages at $52,374.98. The Proof of Claim also referenced the 2008 Loan Modification interest rate of 9.45% and even attached a copy of the 2008 Loan Modification Agreement. RJN, Ex. 15, p. 33-39. Neither Debtor nor Plaintiff objected to or otherwise disputed the Proof of Claim. *See* RJN, Ex. 12. In Debtor's Chapter 13 Plan filed on September 11, 2009, Debtor acknowledged a default on the Senior Loan. RJN, Ex. 16. The Chapter 13 Trustee objected to Debtor's Chapter 13 Plan and the bankruptcy case was then dismissed. RJN Exs. 17, 18.

### 3. 2016 Bankruptcy (Case No. 16-05640)

On September 13, 2016, Debtor filed for bankruptcy under Chapter 13 in the Southern District of California, as Case No. 16-05640 (the "2016 Bankruptcy"). RJN, Ex. 19. In response to the Defendant's Motion for Relief from the Automatic Stay, Debtor agreed to an Adequate Protection Stipulation wherein she admitted arrearages on the Senior Loan. The Order on the Stipulation Granting Adequate Protection Payment was entered on July 5, 2017. RJN, Ex. 20. Debtor also filed a Motion to Value the Junior Loan on December 2, 2016. RJN, Ex. 21. The Junior Loan once again did not object or otherwise oppose to the Motion to Value, despite having filed a Proof of Claim on November 18, 2016.[6] RJN, Ex. 22; *see* RJN, Ex. 23, p. 2. Accordingly, the Motion to Value was granted

---

[5] The Proof of Claim was filed by the prior, Litton Loan Servicing, L.P. *See* RJN, Ex. 15.

[6] For some reason, Plaintiff points out that Defendant did not file a Proof of Claim in the 2016 Bankruptcy. *See* Cmplt., ¶ 32. However, the holder of a secured claim need not file a proof of claim in order to preserve its lien. Fed. R. Bank. P. 3002(a). Secured creditors' liens "ride through" bankruptcy unaffected unless affirmative action is taken to avoid the lien. 11 U.S.C. § 506(d)(2); *Newman v. First Security Bank of Bozeman*, 887 F.2d 973, 976 (9th Cir. 1989).

and the Junior Loan was "wholly unsecured." RJN, Ex. 23, p. 3.

After many objections to the Debtor's Chapter 13 Plans filed by the Chapter 13 Trustee, the bankruptcy case was dismissed. RJN Exs. 24, 25.

### 4. Instant Bankruptcy (Case No. 17-07347)

On December 5, 2017, Debtor filed for bankruptcy under Chapter 13 in the Southern District of California, as Case No. 17-07347 (the "2016 Bankruptcy"). RJN, Ex. 26. In her petition and bankruptcy schedule D, Debtor lists Ocwen loan amount due $742,124.32. RJN, 26, p. 19, D. 2.5. On February 7, 2018, Defendant filed a Proof of Claim.[7] RJN, Ex. 27. The Proof of Claim lists the total claim owed at $742,323.67[8] and also attaches the 2008 Loan Modification Agreement. RJN, Ex. 27, p. 84-88. Debtor did not object or otherwise dispute the Proof of Claim. *See* Dkt., *generally*. In fact, Debtor admits the amount owed on the Senior Loan is $742,124.32 when she filed her Motion to Value the Junior Loan. RJN, Ex. 28, p. 3. Debtor also admits there is a default on the Senior Loan in her Amended Chapter 13 Plan filed on May 1, 2018. RJN, Ex. 29.

## III. **ARGUMENT**

### A. **Plaintiff is Barred by Res Judicata from Objecting to Defendant's Proof of Claim and Senior Loan Amount**

First of all, Defendant's Proof of Claim is valid and proper. But even if it was not (it is), Plaintiff cannot object to the Senior Loan amount or, its validity. Res judicata should be applied to bar Plaintiff from bringing these claims against Defendant. The allowance or disallowance of a "claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata." *Seigal v. Federal Home*

---

[7] The Proof of Claim was filed by Ocwen Loan Servicing, LLC as servicer.

[8] Plaintiff improperly miscites the amount Defendant listed as the total debt in its Proof of Claim. *See* Cmplt., ¶ 36.

*Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998); *United States v. Coast Wineries,* 131 F.2d 643 648 (9th Cir. 1942); *In re Bevan*, 327 F.3d 994, 997 (9th Cir. 2003).

Defendant filed a Proof of Claim in the Second 2009 Bankruptcy on November 6, 2009. RJN, Ex. 15. Plaintiff did not object to or oppose Defendant's Proof of Claim. *See* RJN, Ex. 12. Because there was no objections to the Proof of Claim, the claim was allowed pursuant to 11 U.S.C. § 502(a). A proof of claim allowed in a bankruptcy case is given res judicata effect. *See Bank of Lafayette v. Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993). Plaintiff cannot now in this case object to Defendant's claim. Res judicata also applies in a subsequent action against Defendant. *See Siegel,* at 528-31 (failure to object to creditor's proofs of claim in a bankruptcy case barred subsequent action against creditor based on the creditor's claims).

Plaintiff also did not file an adversary proceeding in the Second 2009 Bankruptcy or in the 2016 Bankruptcy to have Defendant's claim disallowed or have its lien priority determined. Thus, Plaintiff is barred by res judicata from bringing these claims because it failed to challenge the Defendant's November 2009 Proof of Claim or its lien priority.

## B. Plaintiff is Judicially Estopped from Bringing These Claims

Plaintiff is judicially estopped from challenging the validity of Defendant's Proof of Claim, and Senior Loan position and amount.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-601 (9th Cir. 1996). The application of judicial estoppel not only bars the assertion of inconsistent positions in the same litigation, but is also bars litigants from asserting incompatible statements in different cases. *Rissetto*, at 600-601. Court's invoke judicial estoppel to "prevent a party from gaining an advantage by taking inconsistent positions," because of

"general considerations of orderly administration of justice and regard for the dignity of judicial proceedings, and also to "protect against a litigant from playing fast and loose with the courts." *Hamilton v. State Farm Fire & Gas*, 270 F.3d 778, 783 (9th Cir. 2001), quoting from *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990).

Plaintiff's entire lawsuit is based on the allegations that Defendant's claim is invalid and should be disallowed. Cmplt., *generally*. Plaintiff cannot now make these claims given its failure to previously object or oppose Defendant's claim, lien amount/priority. First, Debtor sought to avoid Plaintiff's Junior Loan in the Second 2009 Bankruptcy and the 2016 Bankruptcy but Plaintiff did not object to both of Debtor's motions. *See* RJN, Exs. 12, 22, 23. In fact, the bankruptcy court in the 2016 Bankruptcy granted Debtor's Motion to Value the Junior Loan. RJN, Ex. 23. Second, Plaintiff failed to object or otherwise oppose Defendant's 2009 Proof of Claim. The 2009 Proof of Claim included the 2008 Loan Modification Agreement. Third, Plaintiff did not file an adversary proceeding contesting Defendant's claim or lien priority in the Second 2009 Bankruptcy or in the 2016 Bankruptcy.

Plaintiff benefited from in its actions because it was able to retain its secured creditor status. This is especially true since the Chapter 13 Trustee in both the Second 2009 Bankruptcy and the 2016 Bankruptcy objected to Debtor's Chapter 13 Plans, in part due to its feasibility and ability to pay on the Senior Loan owned by Defendant. Had it not been for Defendant's Senior Loan and the amounts Debtor owed on it, Debtor's Chapter 13 Plans would have likely been feasible and the Trustee would not have needed to object. Plaintiff's Junior Loan would have been avoided and unsecured. After all, Plaintiff did not oppose Debtor's two Motions to Value in two separate bankruptcies, one of which was granted. Plaintiff's failure to oppose Defendant's lien/validity allowed it to keep its status as a secured creditor as it related to the Junior Loan.

Plaintiff cannot now seek to disallow Defendant's claim after having benefited by its previous inactions and acceptance of Defendant's claim. A court imposing judicial estoppel must find that a court relied on or accepted the party's previous inconsistent position. *See Hamilton, supra*, 270 F.3d at 783. Here, the bankruptcy courts relied upon and accepted Plaintiff's inconsistent position by allowing Plaintiff the benefit of remaining a secured creditor. Plaintiff will derive an unfair advantage and Defendant will suffer an unfair detriment if Plaintiff is allowed to proceed with its claims. Allowing Plaintiff's instant case to move forward would allow it an unfair advantage and condone abusive practices. "The application of judicial estoppel… is necessary to protect the integrity of the bankruptcy process." *See HPG Corp., supra*, 436 B.R. at 579; *Hamilton, supra*, 270 F.3d at 785. The court should order Plaintiff is judicially estopped from maintaining its claims.

Notably, Debtor does not dispute Defendant's Senior Loan amount or its priority. Debtor admits the amount owed on the Senior Loan is $742,323.67. RJN, Ex. 26, p. 19, D. 2.5; RJN, Ex. 28, p. 3. Debtor also has never disputed the default on the Senior Loan. The Senior Loan debt amount would therefore obviously have increased in light of the admitted significant default.

### C.    Plaintiff Cannot Enforce a Contract it is Not a Party To

Debtor attached a copy of the unenforceable 2011 Modification to her Motion to Value and now, for some reason, Plaintiff believes the 2011 Modification is "controlling." Cmplt., ¶¶ 52, 69. Plaintiff cannot enforce a contract it is not a party to. There is no dispute that Plaintiff is not a party to 2011 Modification and thus, may not assert claims under it. "One who is not a party to a contract has no right to enforce it unless it is an intended third party beneficiary of the contract. Whether a putative third party is an intended beneficiary of the contract depends on whether such intent appears from the written terms of the contract." *Mission Oaks Ranch, Ltd. v. County of Santa Barbara*, 65 Cal. App. 4th

713, 724 (1998), *disapproved on other grounds by Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999). Plaintiff does not allege that it is a third party beneficiary of the 2011 Modification. It cannot make this false allegation. The judicially noticeable document demonstrates that the only individuals to sign the contract are Debtor and Mr. Rampp.[9]

In addition to the fact that Plaintiff cannot enforce the 2011 Modification because it is not in privity of contract, the Federal Lawsuit that Debtor filed to have the 2011 Modification enforced was dismissed with prejudice. RJN, Ex. 7. A dismissal with prejudice is the modern name for a common law retraxit. *Robinson v. Hiles*, 119 Cal.App.2d 666, 672 (1953). Defendant in that Federal Lawsuit provided evidence showing Debtor and Mr. Rampp obtained the 2011 Modification through fraud and thus, was unenforceable. The Court should dismiss Plaintiff's second cause of action because it improperly asks this Court to determine that an unenforceable contract is enforceable. Cmplt., ¶¶ 60-69.

### D. Defendant's Proof of Claim was Proper and Valid

As Plaintiff acknowledges, a proof of claim using the appropriate form filed with the bankruptcy court and executed under the penalty of perjury, is prima facie evidence of the legitimacy and sum of the claim. Cmplt., ¶ 73; Fed. R. Bank. P. 3001(f); *In re Southern Calif. Plastics, Inc.*, 165 F.3d 1243, 1247-48 (9th Cir. 1999). If a claim is based on a writing, it should be attached. Fed. R. Bank. P. 3001(c)(1). In this case, Defendant properly filed a Proof of Claim that complied with the Bankruptcy Rules. It also attached all the necessary writing, including the Note, the Deed of Trust, Assignment, 2008 Loan Modification Agreement, and all documents showing the amount owed on the Senior Loan. RJN, Ex. 27.

Plaintiff's gripe with the Proof of Claim is that the amount is incorrect because it did not include the 2011 Modification or factor its terms. Cmplt., ¶¶ 71-

---

[9] The 2011 Modification attached to Debtor's Motion to Value does not include Defendant's signature. *See* RJN, Ex. 28.

85. This incorrectly presupposes that the 2011 Modification is enforceable against Defendant. As demonstrated herein, it is not. This is precisely why the Proof of Claim states the default began February 1, 2009. *See* RJN, Ex. 27. Even assuming, arguendo, that the 2011 Modification was "controlling," Debtor admitted that she never made a payment on it the 2011 Modification and thus, Plaintiff incorrectly alleges due for date. Cmplt., ¶¶ 80-81; RJN, Exs. 4-5.

To the extent that Plaintiff basis its claim on the allegation that the Senior Loan amount is incorrect because Defendant's Proof of Claim states the unpaid principal balance owed is $385,640.88, Plaintiff's allegation is nonsensical. Cmplt., ¶ 78. The Proof of Claim clearly itemizes the total debt of $742,323.67, comprising of the unpaid principal balance at $385,640.88, interest at $288,912.32, fees at $34,422.38, escrow at $36,872.40, and less funds of $3,524.31. RJN, Ex. 27. There is nothing inaccurate about this calculation and is in line with the principal balance listed in 2008 Loan Modification ($391,333.20). There is no dispute Debtor made some payments on the 2008 Loan Modification, reducing the principal balance but then subsequently defaulted. The additional line items comprising the total Senior Loan amount are proper and pursuant to the Note, Deed of Trust, and 2008 Loan Modification. Any argument by Plaintiff stating otherwise is false and disingenuous.

Plaintiff's alleges that the Proof of Claim should be disallowed because it fails to include the unenforceable 2011 Modification. This would be improper and also unsupported by law. Even if the 2011 Modification was controlling (again, it is not), the failure to attach this document to the Proof of Claim is not grounds for disallowance. Some courts have concluded that there is no discretion to disallow a claim on any ground other than those stated under 11 U.S.C. § 502(b). *In re MacFarland*, 462 B.R. 857, 880 (BC SD FL 2011). 11 U.S.C. § 502(b) does not have an enumerated ground for dismissal based on lack of documentation. If there are no underlying factual dispute as to the validity, ownership or amount of claim,

1  then there is no basis for objecting for lack of documentation. *In re Burkett*, 329

2  B.R. 820, 829 (BC SD OH 2005) (debtor or trustee must allege a basis that the

3  lack of documentation would require a reduction or disallowance under § 502.

4  Plaintiff's allegation regarding the line item in the Proof of Claim for "Acc

5  Int For BK Filing" in the amount of $404.92 should be disregarded. A secured

6  creditor must provide notice of any post-petition fees incurred in Chapter 13

7  claims securing the debtor's principal residence. Fed. R. Bank. 3002(c). However,

8  that is not the case here. Debtor admits the Property is not her principal residence

9  and even if it was, the remedy would only be to strike the fees – if the Court

10  determines that failure to notice the post-petition fees was harmless. Fed. R. Bank.

11  3002(i). A $404.92 line item incurred on the same day the Debtor filed bankruptcy

12  is harmless.

13  Plaintiff's first and third causes of action both are based on the allegations

14  that the 2011 Modification is not attached to the Proof of Claim or that the terms

15  of the 2011 Modification are not incorporated. Cmplt., ¶¶ 53-59, 70-85. For the

16  reasons explained above, the causes of action should be dismissed with prejudice

17  because they lack merit and are unsupported by law.

18  **E.  Plaintiff Arguably Has No Standing to Object to Defendant's
19       Proof of Claim**

20  A creditor has standing to object to another creditor's claim, provided the

21  outcome of the objection may affect the objecting creditor's recovery from the

22  estate. Fed. R. Bankr. P. 3007; *Siegal v. Federal Home Loan Mortg. Corp.*, 143

23  F.3d 525, 531 (9th Cir. 1998).

24  Even if Plaintiff is successful with having the 2011 Modification enforced,

25  it would not result in greater payments and/or affect Plaintiff's recovery from the

26  estate.[10] Debtor admits the debt owed on the Senior Loan is $742,124.32. Debtor

27

28

---

[10] Plaintiff is not even listed receive payments in Debtor's Amended Chapter 13
     Plan filed on May 1, 2018. RJN, Ex. 29.

also admits the default on the Senior Loan exists. There is likewise no dispute that Defendant has a valid secured lien and is in first lien priority. If the Court were to declare the 2011 Modification and its terms as enforceable, the principal balance on the 2011 Modification was $479,566.54, with the amount increasing due to the default. Plaintiff has not and cannot allege how the 2011 Modification, if "controlling," would impact its ability to recover more from the estate. Notably, if Debtor were to file an adversary case to avoid the Junior Loan like she did in 2 previous bankruptcies, Plaintiff would also be essentially an unsecured creditor, barring Plaintiff from objecting to Defendant's Proof of Claim.[11] *See In re Bakke*, 243 B.R. 753, 755-56 (BC D AZ 1999).

### F.    Plaintiff Has No Grounds to Have Defendant's Claim Disallowed

Generally, a claim filed in a bankruptcy case is deemed allowed, unless an objection has been filed. 11 U.S.C. § 502(a)(1). The basis for claim disallowance are limited to those specified in § 502. *Matter of SNTL Corp.*, 571 F.3d 826, 838-39 (9th Cir. 2009) (bankruptcy courts must find a basis in section 502 to disallow a claim).

Here, Plaintiff fails to allege any basis under § 502 for the court to disallow Defendant's Proof of Claim. The Court should dismiss Plaintiff's adversary Complaint for this reason alone. The Court also cannot disallow Defendant's Proof of Claim based on equitable grounds. Equitable disallowance is not available in this case because it is not one of the enumerated grounds in section 502. *In re LightSquared Inc.*, 504 B.R. 321, 341, fn. 26 (BC SD NY 2013). Equitable disallowance is beyond this Court's equitable powers under 11 U.S.C. § 105(a). *See LightSquared Inc.*, at 341 ("decades of cases limiting the interpretation of section 105 suggest that the bankruptcy court does not possess unlimited equitable powers untethered to specific Code provisions."). The Supreme Court also recently reinforced the limitations on section 105, holding that a bankruptcy

---

[11] Plaintiff does not appear to dispute the Debtor's valuation of the Property.

courts must and can only exercise its equitable powers within the confines of the Bankruptcy Code. *Law v. Siegal*, 571 U.S. 415, 421-422 (2014).

One court suggested equitable disallowance is within the bankruptcy court's authority in extreme circumstances – where the remedy is necessary to ensure injustice or unfairness is not done in the administration of the bankruptcy estate. *See Adelphia Recovery Trust v. Bank of America, N.A.*, 390 B.R. 64, 76 (SD NY 2008). However, that is not the case here. There is no extreme circumstances that Plaintiff can allege that equitable disallowance would ensure injustice or unfairness is not done. To the contrary, if Defendant's claim is disallowed, it would be unjust and unfair to Defendant. Plaintiff voluntarily loaned Debtor funds as a junior lienholder and in second lien position to Defendant's Senior Loan. A seller who invests in a second deed of trust accepts all the risks of the junior position, gambling that the equity in the property will be sufficient to cover the investment in a worst case scenario-a foreclosure sale. *Friery v. Suttes Bank Savings*, 61 Cal.App.4th 869, 878 (1998). Plaintiff's gamble failed in this case.

Moreover, Plaintiff has not overcome the presumption that Defendant's claim is valid because it has not provided a proper legal ground or sufficient evidence. Plaintiff needs to provide sufficient admissible evidence (usually in the form of declarations under the penalty of perjury). *In re G.I. Indus, Inc.*, 204 F.3d 1276 (9th Cir. 2000). Plaintiff's entire case is based on the 2011 Modification attached to Debtor's Motion to Value. However, the 2011 Modification is not enforceable and is not admissible evidence.

### G. Plaintiff's Fourth Cause of Action Fails

#### 1. Defendant Was Not Required to Obtain Plaintiff's Consent to Modify the Senior Loan

Plaintiff seeks to have Defendant's Senior Loan removed from its first priority position because it did not consent to the 2008 Modification. Cmplt., ¶¶ 20, 29, 86-100. To support its fourth cause of action, Plaintiff relies on multiple

1   cases, some of which are from New York state and thus, not binding on this Court.

2   *See* Cmplt., ¶ 88, 91.

3       The applicable case on point here is *Friery v. Suttes Bank Savings*, 61

4   Cal.App.4th 869 (1998), where that court held that a senior lienholder will not

5   lose priority even if there is a material modification of the senior lien, so long as

6   there is no contractual subordination or other special type of relationship with the

7   junior lienholder. *Friery v. Suttes Bank Savings*, at 880-81. In other words,

8   Defendant, as the Senior Loan holder, did not owe Plaintiff, the junior lienholder,

9   a duty of not substantially impairing Plaintiff's security through the 2008

10  Modification because there is no subordination agreement that exists between

11  Plaintiff and Defendant.

12      Plaintiff also relies on *Gluskin v. Atlantic Savings & Loan*, 32 Cal.App.3d

13  307 (1973) and *Lennar Northeast Partners v. Buice*, 49 Cal.App.4th 1576 (1996).

14  Plaintiff's reliance on those older cases are misplaced. In analyzing these issues,

15  the *Friery* court distinguished the limited scope in both *Gluskin* and *Lennar*. In

16  *Gluskin,* the court held that a senior lienholder must obtain consent from a junior

17  lienholder if there's a material modification to the senior. Otherwise, there will be

18  a loss of priority. *Gluskin v. Atlantic Savings & Loan*, at 315. Where as in *Lennar*,

19  the court held that any loss of priority applies only to the modified portions of the

20  lien and not the entire lien. *Lennar Northeast Partners v. Buice*, at 1588. *Friery*

21  declined to extend *Gluski* and differentiated it and *Lennar* because both those

22  cases involved subordination agreement. The *Friery* court explained that the

23  underlying legal basis for the requirement to obtain the junior lienholder's consent

24  before a material modification in those cases was the implied contractual duty of

25  good faith and fair dealing under the subordination agreements. *Friery v. Suttes*

26  *Bank Savings*, at 877. However, in the absence of a subordination agreement or

27  any other type of special relationship between the senior and junior lienholders,

28  the *Friery* court concluded that there is no duty to obtain the junior lineholder's

consent before undertaking a modification, even if it is a material modification and adverse to a junior lienholder's interest. *Id*. at 879-80.

The ruling in *Friery* has been upheld and reaffirmed by *Bank of New York Mellon v. Citybank, N.A.*, 8 Cal.App.5th 935 (2017). In that case, the court held that a "material modification of a senior lien, such as an increase in the principal or interest rate, does not result in loss of priority absent contractual subordination." *See Bank of New York Mellon v. Citybank, N.A.*, 8 Cal.App.5th 935, 954 (2017).

### 2. The 2008 Modification Was Not Material and Did Not Prejudice Plaintiff

The 2008 Modification was not "material" and did not prejudice Plaintiff's Junior Loan.[12] The initial principal balance on the Loan was $400,000 with an adjustable rate no lower than 7.950% that could reach 9.950%. RJN, Ex. 15, p. 28-31, ¶ 4.C; RJN, 27, p. 115-120, ¶ 4.C. The terms of the 2008 Modification reduced the principal balance to $391,333.20 and fixed the interest rate at 9.450% to maturity. RJN, Ex. 15, p. 33-39; RJN, Ex. 27, p. 84-88. There is nothing material when the principal balance decreases or when the interest rate is fixed and lower than the highest possible rate on an adjustable rate. There was likewise no greater risk to subject Debtor to defaulting on the terms of the 2008 Modification than the original loan terms given that she stopped making payments on the original loan almost immediately after origination.

To the extent that Plaintiff alleges there is a "balloon" payment on the 2008 Modification, that allegation is disingenuous and misleading to the Court. Cmplt., ¶ 93.c-d. The 2008 Modification Agreement does not have a balloon payment and

---

[12] Defendant will not address Plaintiff's allegations as to the prejudicial effect of the 2011 Modification because they are not applicable in this case. *See* Cmplt., ¶¶ 94.a-i. It is fairly obvious that Defendant has implemented the terms of the 2008 Modification as evident by the Proof of Claim. *See* RJN, Ex. 27.

only states that "[i]f on October 1, 2035, ("Maturity Date"), [Debtor] still owes any amounts under the Note, Security Instrument or this Agreement, the Borrower shall pay these amounts in full on the Maturity Date." RJN, Ex. 15, p. 33-39, ¶ 5; RJN, Ex. 27, p. 84-88, ¶ 5. The payments on the Senior Loan were re-amortized with a fixed interest rate until maturity, the same date as the original loan. Plaintiff, in no way, can interpret or claim this provision requires a balloon payment. Interestingly, this language mirrors the language in provision 3(A) of Defendant's Note, including provision 3(A) of Plaintiff's Second Note. RJN, Ex. 30, p. 7, ¶ 3(A). Plaintiff's attempt to mislead this Court is improper and its fourth cause of action should be dismissed without leave to amend.

## IV.    LEAVE TO AMEND SHOULD BE DENIED

Plaintiff's Complaint should be dismissed with prejudice because further amendment is futile. Though leave to amend is generally liberally granted, leave to amend here would be futile and a waste of judicial resources. Where a motion to dismiss is granted, a district court should deny leave to amend when it is clear that the complaint could not be saved by any amendment. *See Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).

Defendant has thoroughly explained that Plaintiff's Complaint is completely without merit. Aside from the fact that the claims are barred by res judicata and because Plaintiff is judicially estopped from bringing the claims, the claims fail for independent reasons. First, Plaintiff cannot enforce a contract it is not a party to. Second, Defendant's Proof of Claim is proper and valid. Third, Defendant's claim amount is valid and undisputed by Debtor or by admissible evidence. Fourth, Defendant was not required to obtain Plaintiff's consent before modifying the Loan. Fifth, the modification of the terms of the Loan were not "material" or prejudicial to Plaintiff's Junior Lien.

There is no possibility that Plaintiff could cure the fatal defects of its Complaint. Any amendment would be futile and or fabricated. Accordingly, the

Court should dismiss Plaintiff's Complaint in its entirety.

## V. <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully request that Plaintiff's adversary Complaint be dismissed in its entirety with prejudice and for any other relief as this Court deems just and proper.

Dated: June 29, 2018

**HOUSER & ALLISON**
A Professional Corporation
By: /s/ Gabriel Ozel
Gabriel Ozel
Attorneys for Defendant, HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM1

# <u>CERTIFICATE OF SERVICE</u>

STATE OF CALIFORNIA          )
                                       ) SS

COUNTY OF ORANGE            )

      I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 9970 Research Drive, Irvine, CA 92618.

      On June 29, 2018, I served the following document(s) described as follows:

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS**

      On the following interested parties in this action:

The Law Offices of Michelle Ghidotti
Kristen A. Zilbertstein
1920 Old Tustin Avenue
Santa Ana, CA 92705
kzilbertstein@ghidottilaw.com
*Attorney for Plaintiffs*

[X]    **<u>BY ELECTRONIC MAIL:</u>** I transmitted the document(s) listed above electronically either by e-mail or by electronic filing through the CM/ECF System to the e-mail addresses listed above.  I am readily familiar with Microsoft Outlook's e-mail system and the United States District Court's CM/ECF System, and the transmission was reported as complete without error.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct.

Executed on June 29, 2018 at Irvine, California.

                                 /s/Tami Krogle
                                 Tami Krogle